RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4814-14T2
 A-4950-14T2
 A-4951-14T2
 A-4952-14T2
 A-4953-14T2
NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

L.T.,

 Defendant-Appellant.
___________________________

IN THE MATTER OF L.T., Jr.,

 A Minor.
____________________________

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

L.T., TY.F., E.S. AND TA.F.,

 Defendants-Appellants.
_____________________________

IN THE MATTER OF L.T. and
L.T., Jr.,

 Minors.
_____________________________________________________

 Submitted March 28, 2017 – Decided July 7, 2017

 Before Judges Messano, Espinosa and Grall.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part, Camden
 County, Docket Nos. FN-04-523-14 and FN-04-
 376-14.

 Joseph E. Krakora, Public Defender, attorney
 for appellants (Lora B. Glick, Designated
 Counsel for appellant L.T. in A-4814-14 and
 A-4950-14, on the briefs; Susan M.
 Markenstein, Designated Counsel for appellant
 Ty.-F. in A-4951, on the briefs; John A.
 Salois, Designated Counsel for appellant E.S.
 in A-4952-14, on the briefs; Marina Ginzburg,
 Designated Counsel for appellant Ta.F. in A-
 4953-14, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Melissa Dutton
 Schaffer, Assistant Attorney General, of
 counsel; Angela N. Domen, Deputy Attorney
 General, on the briefs).

 Joseph E. Krakora, Public Defender, Law
 Guardian for minors (Melissa R. Vance,
 Assistant Deputy Public Defender, on the
 briefs).

PER CURIAM

 In A-4814-14, following a fact-finding hearing, see N.J.S.A.

9:6-8.44, the Family Part judge entered her December 2014 order

concluding defendant, L.T. (Larry), had abused his newborn son,

 2 A-4814-14T2
L.T. Jr. (Larry Jr.).1 Larry appeals, arguing the judge misapplied

the burden-shifting paradigm we enunciated in In re D.T., 229

N.J. Super. 509 (App. Div. 1988), and plaintiff, the Division of

Child Protection and Permanency (the Division), otherwise failed

to prove by a preponderance of "competent, material and credible

evidence" that defendant abused Larry Jr.

 For purposes of issuing a single opinion, we now consolidate

A-4814-14 involving abuse of Larry Jr., with four previously

consolidated appeals involving abuse of Larry's daughter L.T.

(Lucy) and challenging the Family Part's July 21, 2014 order

following a fact-finding hearing. The same Family Part judge

heard that case and concluded Larry, and defendants Ty.F. (Tori),

Lucy's mother, Ta.F. (Teresa), Lucy's grandmother and Tori's

mother, and E.S. (Emily), Lucy's great-grandmother and Tori's

grandmother, physically abused Lucy. Those appeals also raise

issues regarding our holding in D.T.

 In Larry's appeal concerning Lucy, A-4950-14, he reiterates

the arguments made in his other appeal and further contends the

judge erroneously admitted evidence as to Larry, Jr., during the

fact-finding hearing involving Lucy. In A-4951-14, Tori argues

the judge misapplied D.T., the Division's evidence was

1
 We use initials and pseudonyms to keep the parties' identities
confidential. R. 1:38-3(d)(12).

 3 A-4814-14T2
insufficient, and, on both constitutional and procedural grounds,

the judge should have excluded evidence from an interview Tori

gave during the criminal investigation into Lucy's physical abuse.

In A-4952-14, Emily argues the judge misapplied D.T., and the

evidence was otherwise insufficient. Lastly, Teresa makes similar

arguments in A-4953-14.

 The Division urges us to affirm the order entered in each

proceeding against all defendants. Larry Jr.'s Law Guardian urges

us to affirm the order under review in A-4814-14; Lucy's Law

Guardian similarly urges us to affirm the order under review in

the other appeals.

 As to A-4814-14

 I.

 The Division was already investigating Larry in connection

with injuries to Lucy when Larry Jr. was born on February 1, 2014.

At the time, Larry was living with the child's mother, K.L. (Kate),

in a home with Kate's biological mother L.L. (Linda), and Linda's

husband, D.M. (Donald). On February 21, Kate executed the

Division's safety plan and moved with Larry Jr. from Camden to

Glassboro to live with her adoptive mother, D.B. (Denise). 2 Two

2
 The Division amended its complaint against Larry and Kate to
include eventually Linda, Donald and Denise as defendants.

 4 A-4814-14T2
days later, Kate called 9-1-1 when Larry Jr. exhibited symptoms

of a seizure. A skeletal survey revealed that the child had

suffered several rib fractures at various stages of healing. The

Division effectuated an emergency removal and filed a verified

complaint seeking care, custody and supervision of Larry Jr.

 The Division's investigation3 revealed that, before emergency

medical technicians arrived in response to the 9-1-1 call, Kate

sought assistance from her neighbor, a nurse. The nurse

administered cardiopulmonary resuscitation (CPR) to Larry Jr.

Larry told the Division's caseworkers that he had not seen his son

since the Division implemented the safety plan. He acknowledged

usually bathing Larry Jr. every other day, but denied any knowledge

of how the child's injuries occurred. Larry questioned whether

the administration of CPR could have been the cause.

 At the fact-finding hearing, Dr. Kathryn McCans testified as

an expert in child abuse pediatrics and pediatric emergency

medicine. She explained that the skeletal survey showed no fewer

than seven definitive rib fractures and two other areas of concern.

3
 After conducting its investigation, the Division concluded that
child abuse was "not established." See N.J. Div. of Child Prot.
& Permanency v. V.E., 448 N.J. Super. 374, 388-89 (App. Div. 2017)
(explaining the Division's regulatory scheme in this regard). At
the fact-finding hearing, a caseworker explained this
determination reflected the Division's inability to decide who had
inflicted Larry Jr.'s injuries.

 5 A-4814-14T2
Dr. McCans opined that a single event could not have caused the

fractures because they were at various stages of healing, nor did

the administration of CPR or the birth process cause these

injuries.

 However, the doctor could not say with precision when any of

the fractures occurred, although she classified one displaced

fracture as acute, that is, having occurred "very recently" before

the time of examination. Dr. McCans acknowledged that this

fracture may have been caused during the administration of CPR,

but stated it was unlikely that the "two-finger" method used by

the nurse-neighbor would have caused the injury. Dr. McCans opined

that the fractures occurred at some point during the "three to

three and a half week time frame" marked by the infant's "whole

life span."

 The doctor concluded the most likely cause was physical abuse,

pointing to the number of fractures sustained at different times,

the lack of any satisfactory explanation in the history recounted

by the child's caregivers, and the unlikelihood of alternative

causes. She opined it was unlikely that any of the injuries were

caused accidentally.

 After conclusion of the Division's case and following her

rejection of defense arguments that the injuries were caused by

accident or during the administration of CPR, and citing D.T., the

 6 A-4814-14T2
judge said, "I am going to shift the burden . . . because I find

that the Division has . . . established a prima facie case that

this is . . . child abuse . . . ." Kate and Donald then testified;

Larry did not.

 Kate testified about her history of domestic violence with

Larry. She denied causing any injuries to Larry Jr. or knowing

how they occurred. Kate stated Larry Jr. was usually in her care,

and that she left the child three times with Larry or Linda. Kate

said Donald never held the child nor was Larry Jr. left alone with

Donald.

 Donald testified he never held Larry Jr., nor cared for him.

However, he recalled one occasion when the child was left alone

with Larry in the bedroom while Kate was at church. Donald and

Linda heard an unusual cry from the child, and Linda knocked on

the closed bedroom door to check. Larry assured them there was

no problem, although Donald claimed Larry Jr. continued to cry for

several minutes.

 In her oral opinion that followed the hearing, the judge

reviewed the testimony, finding Dr. McCans to be credible and

concluding Larry Jr.'s injuries were "of a non-accidental nature

and were caused by . . . someone." The judge declared this was

"a classic burden shifting case." The judge found Kate's testimony

credible, and noting Larry's involvement in the abuse and neglect

 7 A-4814-14T2
matter regarding his other child, found it "quite interesting"

that Kate quickly left with her son and moved in with Denise in

Glassboro. The judge also credited Donald's testimony.

 She concluded the Division had not proven its case against

Kate, Donald and Denise. However, the judge found "the Division

ha[d] sustained its burden with respect to . . . [Linda and

Larry]." (Emphasis added). Noting Larry Jr. suffered all of

these "non-accidental" injuries within a short period, the judge

found "the Division ha[d] proven its case" that Linda and Larry

"were two caretakers who were left alone with this child or left

to care for this child when these injuries occurred." The judge

entered the order under review confirming those findings.

 II.

 "In general, 'Title 9 controls the adjudication of abuse and

neglect cases.'" N.J. Div. of Child Prot. & Permanency v. E.D.-

O., 223 N.J. 166, 177 (2015) (quoting N.J. Div. of Youth & Family

Servs. v. M.C. III, 201 N.J. 328, 343 (2010)). Title Nine defines

an "abused or neglected child" as one under the age of 18 whose

 physical, mental, or emotional condition has
 been impaired or is in imminent danger of
 becoming impaired as the result of the failure
 of his parent or guardian . . . to exercise a
 minimum degree of care . . . in providing the
 child with proper supervision or guardianship,
 by unreasonably inflicting or allowing to be
 inflicted harm, or substantial risk thereof,

 8 A-4814-14T2
 including the infliction of excessive corporal
 punishment . . . .

 [N.J.S.A. 9:6-8.21(c)(4)(b).]

 In these matters, our standard of review is "strictly

limited." N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J.

Super. 551, 577 (App. Div. 2010). "[A]ppellate courts 'defer to

the factual findings of the trial court because it has the

opportunity to make first-hand credibility judgments about the

witnesses who appear on the stand; it has a feel of the case that

can never be realized by a review of the cold record.'" M.C. III,

supra, 201 N.J. at 342-43 (quoting N.J. Div. of Youth & Family

Servs. v. E.P., 196 N.J. 88, 104 (2008)). Moreover, "[b]ecause

of the family courts' special jurisdiction and expertise in family

matters, appellate courts should accord deference to family court

factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). We owe

no deference, however, to the judge's legal conclusions. N.J.

Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010).

 "It is difficult to marshal direct evidence of parental abuse

and neglect because of the closed environment in which the abuse

most often occurs and the limited ability of the abused child to

inculpate the abuser." N.J. Div. of Youth & Family Servs. v.

S.S., 275 N.J. Super. 173, 179 (App. Div. 1994). As a result,

Title Nine provides:

 9 A-4814-14T2
 [P]roof of injuries sustained by a child or
 of the condition of a child of such a nature
 as would ordinarily not be sustained or exist
 except by reason of the acts or omissions of
 the parent or guardian shall be prima facie
 evidence that a child of, or who is the
 responsibility of such person is an abused or
 neglected child.

 [N.J.S.A. 9:6-8.46(a)(2).]

"D.T. created a paradigm to be applied when '[t]he state of the

proofs [makes] it difficult to establish by a preponderance of the

evidence which of the finite group of possible abusers committed

the acts of abuse.'" N.J. Div. of Child Prot. & Permanency v.

K.F., 444 N.J. Super. 191, 201 (App. Div. 2016) (alteration in

original) (quoting D.T., supra, 229 N.J. Super. at 515)).

 In D.T., supra, 229 N.J. Super. at 512, the evidence clearly

established that the four-month-old child was sexually assaulted

most likely during the twenty-four hours before examination by a

doctor. At various times during that period, she was in the care

and custody of her two parents; her great aunt, great uncle, and

two cousins; or a family friend, the friend's husband and their

two grandchildren. Id. at 511-12. In reversing the trial court's

dismissal of the Division's complaint, the majority of the panel

analogized the circumstances to those presented in Anderson v.

Somberg, 67 N.J. 291, 298-99, cert. denied, 423 U.S. 929, 96 S.

Ct. 279, 46 L. Ed. 2d 258 (1975), and held where

 10 A-4814-14T2
 a limited number of persons, each having
 access or custody of a baby during the time
 frame when a sexual abuse concededly occurred,
 no one else having such contact and the baby
 being then and now helpless to identify her
 abuser, . . . [t]he burden would then be
 shifted, and such defendants would be required
 to come forward and give their evidence to
 establish non-culpability.

 [D.T., supra, 229 N.J. Super. at 517 (emphasis
 added).]

 Twenty years later, we took a step back from D.T. in Division

of Youth & Family Services v. J.L., 400 N.J. Super. 454, 457-59

(App. Div. 2008), a case in which the three-and-one-half-month-

old child suffered multiple fractures on different occasions. In

J.L., the defendants offered that persons other than the parents

had access to the child and substantial medical evidence. Id. at

457-59, 464-66. The trial judge credited the defense expert's

opinions that the child's pre-existing medical conditions

increased the likelihood of fractures. Id. at 464-67. Although

the judge indicated at the conclusion of the Division's case that

the burden of proof had shifted to the defendant-parents pursuant

to D.T., she "allowed the burden of proof to remain on the Division

and concluded that the Division did not prove by a preponderance

of the evidence that either parent abused [the child]." Id. at

466.

 11 A-4814-14T2
 We noted that "[h]ere, unlike in D.T., the circumstances do

not fit the Anderson v. Somberg burden-shifting paradigm." Id.

at 469. Instead,

 [i]n a case such as this, where the child is
 exposed to a number of unidentified
 individuals over a period of time, and it is
 unclear as to exactly where and when the
 child's injuries took place, traditional res
 ipsa loquitur principles apply. This means
 that once the Division establishes a prima
 facie case of abuse or neglect under N.J.S.A.
 9:6-8.46a(2), the burden will shift to the
 parents to come forward with evidence to rebut
 the presumption of abuse or neglect. Unlike
 the rule set forth in D.T., the burden of proof
 will not shift to the parents to prove their
 non-culpability by a preponderance of the
 evidence. The burden of proof will remain on
 the Division.

 [Id. at 470 (emphasis added).]

We affirmed, concluding the judge's factual findings were well

supported by the record, and the defendants successfully overcame

the presumption under N.J.S.A. 9:6-8.46(a)(2). Id. at 473.

 In this case, Larry argues the judge erroneously shifted the

burden of proof under D.T. because numerous people had access to

Larry Jr. and the evidence failed to identify with any precision

when the injuries occurred. However, Larry concedes that, as in

J.L., traditional notions of res ipsa loquitur would then apply

to the facts of this case.

 12 A-4814-14T2
 We agree that the burden shifting, or "conditional" res ipsa

loquitur approach, utilized by D.T. does not apply to this case.

Larry Jr.'s injuries occurred over the course of his short

lifetime, and Dr. McCans could not opine as to when they were

inflicted. However, as in J.L., traditional notions of res ipsa

loquitur applied here.

 Although the judge in this case stated she was shifting the

burden of proof under D.T., like the trial judge in J.L. she

actually reviewed the evidence as to each of the five defendants

and considered whether the Division had met its burden of proof

as to each one. In other words, the judge did not decide the case

based upon whether the defendants had "come forward and giv[en]

their evidence to establish non-culpability." D.T., supra, 229

N.J. Super. at 517 (emphasis added) (citing Anderson, supra, 67

N.J. at 298-99). As a result, we find no legal error requiring

reversal.

 Larry further argues the evidence was insufficient to

establish he abused Larry Jr., but we disagree. The judge found

that on the few occasions that Kate left Larry Jr. alone, it was

with Larry or Linda. She credited Donald's testimony about the

one occasion where the child was alone with Larry behind a closed

bedroom door, and Donald and Linda heard a strange cry from Larry

Jr., followed by several minutes of crying. Additionally, Larry

 13 A-4814-14T2
admitted to being the one who bathed Larry Jr. every other day,

and, while he offered two rationales for how the fractures might

have occurred, Dr. McCans rejected both as likely causes.

 In short, we accord deference to the trial judge's findings,

including her express credibility determinations regarding the

testimony of Dr. McCans, Kate and Donald. See E.P., supra, 196

N.J. at 104. We therefore affirm.

 As to A-4950-14; A-4951-14;A-4952-14; and 4953-14

 I.

 Lucy was born to Tori and Larry in August 2013. The child

lived with Tori; Teresa; Teresa's two children, ages seventeen and

thirteen; and Emily, in Emily's home. Larry was living at the

time with his mother and uncle.

 On November 15, 2013, Larry and Tori brought Lucy to the

emergency room because of redness, swelling and a possible cut on

the child's tongue. Tori left to go to work, but Larry stayed

while Dr. McCans examined Lucy. The doctor noted a marked decrease

in Lucy's weight since she was last seen less than one month

earlier. A skeletal survey and CT scan revealed Lucy had suffered

numerous bilateral fractures to her ribs and clavicles at various

stages of healing, injuries which Dr. McCans believed were the

result of physical abuse.

 14 A-4814-14T2
 Division caseworkers interviewed all four defendants. In

addition, detectives from the Camden County Prosecutor's Office

opened a parallel criminal investigation into Lucy's suspected

abuse and questioned Tori and Larry. Larry explained to

investigators that Tori was primarily responsible for the child's

care, and that either he or Emily would watch her while Tori was

at work, though he had been caring for Lucy more often recently,

since he lost his job. Larry visited Lucy every day, usually

arriving in the morning, taking her with him to his uncle's house

and then bringing her home at night. Larry denied causing any of

Lucy's injuries and implied one of Teresa's children or Emily may

have caused them.

 Tori told caseworkers she was unaware of what could have

caused Lucy's fractures. She claimed Larry only visited the child

at Emily's house "once in a blue," because Emily did not like him,

and Larry had not seen Lucy for about a week prior to her admission

to the hospital. Emily usually watched the baby when Tori was at

work.

 At the outset of the criminal interview, detectives advised

Tori of her Miranda4 rights, which she waived before questioning

began. She initially denied any knowledge of how the fractures

4
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 15 A-4814-14T2
occurred. However, after being repeatedly pressed by detectives,

who also offered help for the family, Tori said she may have caused

the fractures accidentally "by holding [Lucy] too tight."

 When interviewed by caseworkers, Emily corroborated that she

usually watched Lucy and stated she had no concerns with Tori's

parenting abilities. Emily said Larry was not allowed at her

house. Teresa likewise confirmed that Larry did not visit every

day, as he claimed, noting she had recently asked him, at Emily's

request, to restrict his visits only to certain hours in the

afternoon. Lucy had never stayed overnight with Larry outside the

home. Neither Emily nor Teresa knew how the child's injuries had

occurred.

 At the fact-finding hearing, Dr. McCans was the only witness

called by the Division. She described Lucy's appearance on

examination as "small and thin" and recalled observing swelling

and ulceration under her tongue, likely the result of blunt force

trauma. The decrease in the child's weight since her prior check-

up caused Dr. McCans to consider the possibility of nutritional

neglect.

 Dr. McCans concluded, based on the different stages of

healing, that the fractures had occurred over time rather than in

a single event. However, she could not "pinpoint" precisely when

any of them had occurred, explaining that a young infant's

 16 A-4814-14T2
relatively rapid rate of healing precluded reaching such a

determination with sufficient accuracy. Dr. McCans concluded,

based on the number of injuries, Lucy's age, and lack of other

explanation, that the child's injuries were "diagnostic of non-

accidental trauma or child physical abuse."

 At the close of Dr. McCans's testimony, the Division asked

the judge to shift the burden of proof to defendants under our

holding in D.T. Defendants objected, arguing other individuals

not named in the complaint had access to Lucy. Additionally,

Larry's counsel specifically argued D.T. was inapposite and the

facts in this case were more similar to the facts in J.L.

 The judge agreed with the Division that the burden of proof

should shift to defendants under D.T. She distinguished J.L.,

noting there was no evidence that Lucy was restrained excessively

during the diagnostic procedures, nor was there any evidence that,

like the child in J.L., Lucy suffered from a pre-existing condition

making her more susceptible to fracture.5

 After the judge had conducted an in camera review of Dr.

McCans' expert report regarding Larry Jr.'s injuries, and over

Larry's objection, she ruled that a redacted portion of the report

could be introduced. Emily then recalled Dr. McCans as a witness,

5
 At the time, Kate was a defendant in the case. The judge granted
Kate's motion and dismissed the complaint as to her.

 17 A-4814-14T2
and she described the multiple fractures Larry Jr. suffered and

her opinion that they were the result of physical abuse.

 Teresa testified that she did not cause Lucy's injuries and

she had no idea how they occurred. Teresa noted her contact with

the child was limited, since she was in school, also worked and

frequently did not come home until late at night. Teresa claimed

that Emily or Larry watched the baby while Tori was at work.

 At the conclusion of the hearing, in an oral opinion, the

judge found Dr. McCans to be a credible witness and accepted the

doctor's opinions that Lucy's injuries were not caused

accidentally. The judge concluded all four defendants had been

Lucy's caretakers.

 The judge also determined that none of the defendants had

carried his or her burden of proof and demonstrated he or she was

not culpable. She noted Tori offered no evidence and her statement

to detectives failed to exonerate her. The judge also stated

Larry failed to present any evidence regarding his non-

culpability. The judge found Teresa was not a credible witness

and failed to present any other evidence exonerating herself. As

to Emily, the judge acknowledged Dr. McCans' testimony and report

regarding the physical abuse of Larry Jr., but she concluded Emily

had "not sustained her burden and set forth any proof that she is

not a culpable defendant." The judge entered a conforming order.

 18 A-4814-14T2
 II.

 As noted, all four defendants contend the judge erred in

shifting the burden of proof to each of them under our holding in

D.T. Defendants argue other people, for example Teresa's children,

also had access to Lucy, and Dr. McCans could not identify with

precision when the abuse occurred. Larry specifically argues

that, similar to the factual circumstances of J.L., traditional

notions of res ipsa loquitur should have applied, and the burden

of proof should never have shifted to defendants. We agree.

 As we cautioned in D.T., supra, 229 N.J. Super. at 517

(emphasis added), the burden of proof is shifted to defendants in

a Title Nine action in very limited circumstances, i.e., when "a

limited number of persons[] each ha[d] access or custody of a baby

during the time frame when . . . abuse concededly occurred, no one

else ha[d] such contact[,] and the baby [was and remains] helpless

to identify [its] abuser." Here, unlike D.T. where the sexual

abuse of the child occurred within a 24-hour period, Dr. McCans

could only opine that Lucy suffered multiple injuries over her

three-month lifespan. The circumstances here were more like those

in J.L.

 The judge explicitly rejected J.L.'s application, finding

that unlike the facts in that case, Lucy had no pre-existing

medical condition that made her susceptible to fractures and there

 19 A-4814-14T2
was no evidence the child was restrained during the diagnostic

procedures. However, those facts, while present in J.L., were not

determinative. Rather, we concluded the principles of traditional

res ipsa loquitur apply "where the child is exposed to a number

of unidentified individuals over a period of time, and it is

unclear as to exactly where and when the child's injuries took

place." J.L., supra, 400 N.J. Super. at 470. This was such a

case.

 We therefore reverse the order under review and remand the

matter to the trial court for consideration of the evidence under

the appropriate standard. Because the parties relied upon the

judge's interlocutory decision during the fact-finding hearing,

and because we have now clarified what standard should apply in

this case, we leave to the trial judge's discretion whether the

Division and defendants may introduce additional evidence.

 III.

 We briefly comment on two issues to provide guidance on

remand.

 Tori contends the judge erred by admitting in evidence the

statement she gave to law enforcement. She contends that the

failure to allow her an opportunity to retain counsel in the Title

Nine matter prior to being questioned in the criminal matter

 20 A-4814-14T2
deprived her of due process, and her apparent waiver of the right

to counsel at her interview was neither knowing nor voluntary.

 Tori never raised these issues before the trial judge and we

refuse to consider them now. State v. Robinson, 200 N.J. 1, 20

(2009). We express no opinion about the merits of these arguments

if raised on remand.

 Lastly, Larry argues the judge erred in admitting Dr. McCans'

testimony and redacted report regarding her findings of the

physical abuse of Larry Jr. He argues the judge should have

analyzed the evidence under N.J.R.E. 404(b) and, applying that

reasoning, the evidence should have been excluded because "its

probative value [was] substantially outweighed by the risk of

. . . undue prejudice . . . ." N.J.R.E. 403(a). We note that the

judge never considered the evidence of Larry Jr.'s abuse as

evidence of Larry's culpability in this case; she only considered

and rejected the evidence as exculpating Emily.

 Title Nine explicitly states that "[i]n any hearing under

this act, . . . proof of the abuse or neglect of one child shall

be admissible evidence on the issue of the abuse or neglect of any

other child of, or the responsibility of, the parent or guardian."

N.J.S.A. 9:6-8.46(a)(1). In I.H.C., supra, 415 N.J. Super. at

573, we "h[eld] that in civil proceedings for the protection of a

child, a parent or guardian's past conduct can be relevant and

 21 A-4814-14T2
admissible in determining risk of harm to the child." Citing

N.J.S.A. 9:6-8.46(a)(1) we said, "the statute itself provides for

admissibility of evidence about other children." Ibid. We held

"that where expert testimony in an abuse or neglect case provided

support for a finding that [the] defendant's prior acts of domestic

violence show his disposition to commit such violence, the court

should have admitted that evidence in assessing risk of harm to

the children." Id. at 576.

 However, we hastened to add "[o]ur conclusion does not mean

that N.J.R.E. 404(b) should never be applied in abuse or neglect

cases to determine admissibility of other crimes or bad acts

evidence." Id. at 576 (citing N.J. Div. of Youth and Family Servs.

v. H.B., 375 N.J. Super. 148, 181 (App. Div. 2005)). In H.B., we

implicitly approved application of N.J.R.E. 404(b) to consider

whether the defendant's conviction for sexual abuse of a child

twelve years earlier would be relevant in the current Title Nine

litigation, in which the defendant was accused of sexually abusing

his stepdaughter. H.B., supra, 375 N.J. Super. at 176, 180-81.

 In a case such as this, where the evidence of Larry Jr.'s

abuse was potentially relevant to prove the "identity" of Lucy's

abuser, or perhaps the "absence of mistake or accident" as a cause

of her injuries, N.J.R.E. 404(b), the judge should analyze the

evidence under the "standards for admissibility articulated by our

 22 A-4814-14T2
Supreme Court in State v. Cofield, 127 N.J. 328, 338 (1992)."

H.B., supra, 375 N.J. Super. at 181 (citation modified).

 In sum, we affirm the order in A-4814-14. In A-4950-14, A-

4951-14, A-4952-14 and A-4953-14, we reverse and remand for further

proceedings consistent with this opinion. We do not retain

jurisdiction.

 23 A-4814-14T2